**James M. Healy, OSB No. 123403**
jhealy@gattilaw.com
The Gatti Law Firm
235 Front St. SE, Ste. 200
Salem, Oregon, 97301
Telephone: 503-363-3443
Fax: 503-371-2482
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **MANDY N. WHITLEY**,<br><br>         Plaintiff,<br>vs.<br><br>**NICOLE P. LOBATO,** an individual; **SAMUEL D. POSTHUMA**, an individual; and **THE CITY OF ALBANY**, a municipal corporation<br><br>         Defendants. | Civil Action No.<br><br>**COMPLAINT**<br><br>Civil Rights Violations: 42 USC § 1983, Fourteenth Amendment Due Process; Negligence<br><br>DEMAND FOR JURY TRIAL |

Plaintiff alleges the following based upon the information and evidence that could be reasonably obtained prior to filing this Complaint. Additional information and evidence in the possession of Defendants and third parties may be obtained, as allowed under the Federal Rules of Civil Procedure, and these allegations shall be amended thereafter, as needed, and as permitted by Fed. R. Civ. P. 15:

Page 1 - COMPLAINT

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiff's claims for violation of federal constitutional rights under 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper under 28 U.S.C § 1391(b) in that one or more of the defendants reside in the District of Oregon and Plaintiff's claims for relief arise in this District.

3. This Court has jurisdiction over Plaintiff's pendent state law claim under 28 U.S.C. § 1367.

## PARTIES

4. Plaintiff Mandey N. Whitley is a resident of the State of Oregon.

5. Defendant City of Albany is a municipal corporation in the State of Oregon.

6. The Albany Police Department is the law enforcement agency of Defendant City of Albany.

7. Defendant Nicole P. Lobato ("Defendant Lobato") is/was a police officer employed by the City of Albany and, at all material times, was acting within the course and scope of her employment and acting under the color of law. Defendant Lobato is sued in her individual capacity.

8. Defendant Samual D. Posthuma ("Defendant Posthuma") is/was a police officer employed by the City of Albany. At all times material Defendant Posthuma was a Seargent with the Albany Police Department and was Defendant Lobato's supervising officer at the time of the events alleged herein. At all material times, Defendant Posthuma was acting within the course and scope of his employment with the Albany Police Department and was acting under the color of law. Defendant Posthuma is sued in his individual capacity.

/ / /

## FACTUAL ALLEGATIONS

9. In the early morning hours of September 4, 2023, while at her mother's apartment, Plaintiff called the non-emergency line for Albany Police Department to report her ex-boyfriend, Christopher W. Gray, was outside the apartment harassing her. Plaintiff further explained to dispatch that Mr. Gray had a warrant for his arrest. Dispatch told Plaintiff it would send police to speak with Plaintiff.

10. At the time of Plaintiff's call to Albany Police Department, Mr. Gray had a known history of domestic violence against Plaintiff. Albany Police Department, Defendant Lobato, and Defendant Posthuma knew of Mr. Gray's domestic violence history upon their arrival to the apartment complex where Plaintiff was.

11. When police arrived at the apartment complex in response to Plaintiff's call Mr. Gray fled to evade arrest.

12. Despite Mr. Gray's flight, police officers remained to look for him. While at the apartment complex Plaintiff spoke with Defendant Lobato who was one of the police officers that responded to Plaintiff's call.

13. While speaking with Defendant Lobato, Mr. Gray called Plaintiff's cell phone. Plaintiff asked Defendant Lobato whether she should answer the call and Defendant Lobato told Plaintiff to answer. But for Defendant Lobato's direction, Plaintiff would not have answered the call.

14. Plaintiff placed her cell phone on speaker and Defendant Lobato listened in to the call. During the phone call Defendant Lobato heard Mr. Gray accuse Plaintiff of calling the police, heard Plaintiff lie to Mr. Gray and deny she had called police, heard Mr. Gray inform Plaintiff he

was hiding from the police, and heard Mr. Gray request Plaintiff come pick him up in Plaintiff's vehicle.

15.     Upon overhearing Mr. Gray's conversation with Plaintiff, Defendant Lobato instructed Plaintiff to tell Mr. Gray Plaintiff would drive to pick him up at a 7-Eleven store near the apartment complex.  Plaintiff told Defendant Lobato she was scared of Mr. Gray getting into Plaintiff's vehicle and asked Defendant Lobato to follow her.  Defendant Lobato assured Plaintiff that she would not let Mr. Gray into Plaintiff's vehicle.  The reasonable implication of Defendant Lobato's assurances was that Defendant Lobato, or other Albany Police Department officers, would follow Plaintiff's vehicle, maintain surveillance of Plaintiff, and would locate and apprehend Mr. Gray before he could gain access to Plaintiff.

16.     Upon information and belief, Defendant Posthuma, as Defendant Lobato's supervising officer on the scene, knew of, participated in, and affirmed Defendant Lobato's directions to Plaintiff to set a rendezvous with Mr. Gray at 7-Eleven.

17.     Upon and but for Defendant Lobato's assurances that she would keep Plaintiff under surveillance and not let Mr. Gray get into Plaintiff's vehicle, Plaintiff agreed to Defendant Lobato's request to drive to 7-Eleven where, at Defendant Lobato's request, Plaintiff had instructed Mr. Gray to meet.

18.     Despite assuring Plaintiff she would not let Mr. Gray enter Plaintiff's vehicle, Defendant Lobato did not immediately follow Plaintiff to the 7-Eleven store where Defendant Lobato had instructed Plaintiff to arrange to meet Mr. Gray, and therefore did not maintain surveillance on Plaintiff's vehicle so as to ensure Plaintiff's safety.  Instead, while Plaintiff drove to 7-Eleven at Defendant Lobato's request, Defendant Lobato remained at the apartment complex to continue to look for Mr. Gray.  Only later, after Defendant Lobato was unable to locate Mr.

Gray at the apartment complex did Defendant Lobato then begin to travel toward 7-Eleven, where she had previously instructed Plaintiff to arrange to meet Mr. Gray.

19. When Plaintiff arrived near 7-Eleven, Mr. Gray called Plaintiff and told her he was still at the apartment complex. Plaintiff then spoke on the phone with Defendant Lobato to share this information – Mr. Gray's updated location – and Defendant Lobato instructed Plaintiff to return to the apartment complex. Defendant Lobato, however, did not provide Plaintiff any further instruction as to where to go within the apartment complex or what to do once at the apartment complex. Further, at that time Defendant Lobato was no longer at the apartment complex when she instructed Plaintiff to return. But for Defendant Lobato's instruction to return to the apartment complex, Plaintiff would not have done so.

20. Upon her arrival back at the apartment complex, Defendant Lobato was not present, nor were any police officer following Plaintiff, despite Defendant Lobato's assurances that she would not let Mr. Gray enter Plaintiff's vehicle. Once back at the apartment complex, contrary to Defendant Lobato's implied assurances that police would maintain surveillance of her vehicle and apprehend Mr. Gray before he could get close to Plaintiff, Mr. Gray saw Plaintiff's vehicle, approached and entered it, and instructed Plaintiff to drive away from the scene. For fear for her physical safety if she did not comply with his requests, Plaintiff did as Mr. Gray instructed.

21. Mr. Gray instructed Plaintiff to drive to a remote location, where Mr. Gray raped Plaintiff.

22. Mr. Gray was subsequently apprehended, prosecuted and convicted of Kidnapping in the First Degree and Sexual Abuse in the First Degree for his conduct against Plaintiff on September 4, 2023.

23. As a result of the actions of Defendants, and each of them, Plaintiff was raped by Mr. Gray. Plaintiff, accordingly, suffered injuries and damages, including physical and sexual assault, violation of her bodily autonomy, fear for her life, fear for her physical safety, diminished sense of self-worth, physical pain, mental pain, suffering, and emotional distress. Additionally, as a result of the actions of Defendants, and each of them, Plaintiff will continue to suffer some or all of her injuries and damages for the rest of her 37 years of expected life. Accordingly, Plaintiff has suffered past non-economic damages, and will suffer future non-economic damages, in an amount to be determined reasonable by a jury, but not to exceed the sum of $20,000,000.00.

## FIRST CLAIM FOR RELIEF
### Violation of Fourteenth Amendment – Danger Creation (42 USC § 1983)
### Against Defendants Lobato and Posthuma

24. Plaintiff incorporates the allegations in Paragraphs 1 through 23 as though fully stated herein.

25. The Fourteenth Amendment to the United States' Constitution protects a citizen's liberty interest in her own bodily security.

26. In violation of Plaintiff's Fourteenth Amendment liberty interest to her bodily security, Defendant Lobato affirmatively created and exposed Plaintiff to a dangerous situation which placed Plaintiff in far greater danger than she otherwise would have been in but for Defendant Lobato's actions. Defendant Lobato's affirmative acts that created a danger to Plaintiff she would not otherwise have faced included:

    a. Requesting, convincing, encouraging, and securing Plaintiff's agreement to act as "bait" to assist the police in locating Mr. Gray and effectuating his arrest;

    b.  By affirmatively representing and assuring to Plaintiff through words and actions that Defendant Lobato and/or other Albany police would follow and protect Plaintiff in the event she located and came into close proximity to Mr. Gray, thereby instilling in Plaintiff a false sense of security; and

    c.  By instructing Plaintiff to return to the apartment complex where Mr. Gray was last reported to be when Defendant Lobato was not herself at the apartment complex to protect Plaintiff from Mr. Gray, and when Defendant Lobato had taken no other actions to ensure Plaintiff's safety upon her return to the apartment complex.

  27.  Defendant Posthuma, as Defendant Lobato's supervising officer on the scene, knew of Defendant Lobato's affirmative conduct, insofar as Defendant Posthuma knew Defendant Lobato was soliciting Plaintiff's physical assistance and participation in apprehending Mr. Gray, and knew that as part of Defendant Lobato's solicitation of Plaintiff Defendant Lobato was assuring Plaintiff's safety thereby instilling in Plaintiff a false sense of security, as alleged in Paragraph 26.  Despite this knowledge Defendant Posthuma took no action to prevent or terminate Defendant Labato's conduct or otherwise act to protect Plaintiff from the danger created by Defendant Lobato's affirmative conduct.  Defendant Posthuma tacitly approved Defendant Lobato's affirmative conduct by participating in scheme Defendant Lobato devised.

  28.  Defendants Lobato and Posthuma recognized and knew that Mr. Gray's history of domestic abuse of Plaintiff and methamphetamine abuse posed an obvious danger to Plaintiff. Defendants Lobato and Posthuma knew that if Mr. Gray was to gain physical access to Plaintiff there was a substantial risk Mr. Gray would engage in further acts of domestic abuse and/or violence against Plaintiff.  Despite this knowledge, Defendant Lobato still engaged in the

foregoing affirmative conduct which was specifically designed to put Plaintiff in close proximity with Mr. Gray. And, despite this knowledge, Defendant Posthuma failed to terminate Defendant Lobato's affirmative conduct or otherwise act to prevent the danger to Plaintiff created by Defendant Lobato's conduct. Defendants Lobato and Posthuma did so with deliberate indifference to and/or conscious disregard of the known and substantial risk of harm to Plaintiff.

29. As a direct and proximate consequence of Defendants Lobato's violation of Plaintiff's Fourteenth Amendment liberty interest in her bodily security, Plaintiff suffered the harm, injuries, and damages alleged in Paragraph 23.

30. Defendant Posthuma's knowledge, participation, and tacit approval of Defendant Lobato's conduct, as alleged above, acted as a moving force for Defendant Lobato to violate Plaintiff's constitutional rights, and for Plaintiff to suffer the harm, injuries, and damages alleged in Paragraph 23.

31. The harm, injuries, and damages alleged in Paragraphs 23 were the foreseeable consequence of the dangerous situation Defendants Lobato and Posthuma created by their conduct, and the foreseeable consequence was particularized to Plaintiff.

32. For Defendants Lobato and Posthuma's demonstrated reckless indifference to Plaintiff's Fourteenth Amendment liberty interest in her bodily security, Plaintiff seeks an award of punitive damages in an amount to be determined reasonable by a jury.

33. Pursuant to 42 USC § 1988 Plaintiff is entitled to recover her reasonable attorneys' fees and costs.

/ / /

/ / /

/ / /

## SECOND CLAIM FOR RELIEF
### Violation of Fourteenth Amendment – *Monell* (42 USC § 1983)
### Against Defendant City of Albany

34. Plaintiff incorporates the allegations in Paragraphs 1 through 31 as though fully stated herein.

35. Upon information and belief, Defendant City of Albany, acting through its Albany Police Department, maintained a policy of inaction with respect to its officers' placement of domestic violence victims in harms' way. Additionally, Defendant City of Albany, acting through its Albany Police Department, maintained a policy of failing to train its officers, including Defendants Lobato and Posthuma, that a domestic violence victim should never be used to assist officers in apprehending the victim's abuser in situations that could cause the victim to come into close proximity with the abuser.

36. The training Defendant City of Albany, acting through its Albany Police Department, did employ to train its officers were inadequate to prevent violations of law by its officers, and/or train its officers to handle the usual and recurring situations with which they must deal when calls involve domestic abuse victims and domestic abusers.

37. Defendant City of Albany, acting through its Albany Police Department, was deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of law by its officers, and were deliberately indifferent to the known or obvious consequences of its failure to train its officers adequately.

38. The failures of Defendant City of Albany, acting through its Albany Police Department, to prevent violations of law by its officers, and/or to provide adequate training caused the deprivation of Plaintiff's rights by Defendants Lobato and Posthuma; that is, the City of Albany's failure to prevent violations of law by its employees, and/or its failure to train, played a

substantial part in bringing about or actually causing Plaintiff's harms, injuries, and damages alleged in Paragraph 23.

39. Pursuant to 42 USC § 1988 Plaintiff is entitled to recover her reasonable attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
### (Negligence)
### Against all Defendants

40. Plaintiff incorporates the allegations in Paragraphs 1 through 23 as though fully stated herein.

41. Defendants Lobato, Posthuma, and City of Albany were under a legal obligation to exercise the same degree of care and skill as would a reasonably prudent law enforcement officer under the same or similar circumstances so as to avoid causing Plaintiff foreseeable harm.

42. Defendant Lobato, while acting in the course and scope of her employment with the City of Albany, was negligent in one or more of the following particulars:

    a. In requesting and convincing Plaintiff to engage in conduct that was specifically designed to put Plaintiff in close proximity to Mr. Gray;

    b. In failing to use alternative and safer means to locate and arrest Mr. Gray which did not involve Plaintiff as a participant;

    c. In failing to follow, surveil, and/or maintain line-of-sight of Plaintiff for the duration of the trip, or cause another officer to follow, surveil, and/or maintain line-of-sight of Plaintiff for the duration of the trip, to ensure she or other officers could apprehend Mr. Gray prior to Mr. Gray gaining access to Plaintiff;

/ / /

/ / /

    d.  In instructing Plaintiff to return to the apartment complex where Mr. Gray was reported to be when Defendants were not themselves at the apartment complex so as to protect Plaintiff from Mr. Gray;

    e.  In failing to develop and clearly communicate the details of any plan, with necessary contingencies, for the trip to ensure Plaintiff would remain close enough to law enforcement such that law enforcement could protect Plaintiff from Mr. Gray; and

    f.  In failing to create, and obtain supervisor approval of, an appropriate tactical plan related to Plaintiff's participation in police efforts of locating and arresting Mr. Gray;

    g.  In failing to otherwise, through means available to her as a law enforcement officer, protect Plaintiff from Mr. Gray.

  43.  Defendant Posthuma, while acting in the course and scope of his employment with the City of Albany, was negligent in one or more of the following particulars:

    a.  As Defendant Lobato's direct supervisor, in failing to terminate Defendant Lobato's plan which was specifically designed to put Plaintiff in close proximity with Mr. Gray;

    b.  As Defendant Lobato's direct supervisor, in tacitly approving Defendant Lobato's plan, as evidenced by his participation in the plan, which was specifically designed to put Plaintiff in close proximity with Mr. Gray;

    c.  As Defendant Lobato's direct supervisor, in failing to create, or ensure that Defendant Lobato created, an appropriate tactical plan related to Plaintiff's participation in police efforts of locating and arresting Mr. Gray;

      d.      As Defendant Lobato's direct supervisor, in failing to ensure he and Defendant Lobato had clearly communicated the details of any plan between themselves so as to ensure they had accounted for all foreseeable contingencies to ensure their protection of Plaintiff;

      e.      As Defendant Lobato's direct supervisor, in failing to ensure he and/or Defendant Lobato had clearly communicated directions to Plaintiff so as to account to any contingencies in the plan;

      f.      As Defendant Lobato's direct supervisor, in failing to ensure he and/or Defendant Lobato adequately surveilled Plaintiff's vehicle to ensure he, Defendant Lobato, and/or another Albany Police Department officer could protect Plaintiff from Mr. Gray in the event Mr. Gray gained access to Plaintiff; and

      g.      In failing to otherwise, through means and resources available to him as a ranking law enforcement officer, protect Plaintiff from Mr. Gray.

44.     Defendant City of Albany was negligent in one or more of the following particulars:

      a.      In failing to adequately train Defendant Lobato and/or Defendant Posthuma on appropriate and safe ways to apprehend a known domestic abuser which do not require or involve the domestic abuse victim's physical participation in the apprehension of the abuser;

      b.      In failing to adequately monitor Defendant Lobato when Defendant Lobato devised the plan to effectively use Plaintiff as "bait" to locate and lure Mr. Gray, for police to attempt to apprehend him; and

      c.      Plaintiff reserves the right to amend her complaint to allege further specifications of negligence after completion of fact discovery.

45. Defendants' negligence, as alleged in Paragraphs 42 through 44 above, created the foreseeable risk of harm to Plaintiff that Mr. Gray would come into contact with Plaintiff and cause Plaintiff physical harm.

46. As a result of Defendants' negligence, as alleged in Paragraphs 42 through 44, Plaintiff suffered the harm, injuries, and damages alleged in Paragraph 23.

47. Plaintiff provided the City of Albany timely notice of her intent to pursue this tort claim, as required pursuant to ORS 30.275.

## AS TO ALL PLAINTIFF'S CLAIMS

48. Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

For Plaintiff's First Claim for Relief:

    For noneconomic damages of $20,000,000.00;

    For punitive damages in an amount determined reasonable by the jury;

    For Plaintiff's reasonable attorneys' fees, costs, and disbursements; and

    For all other relief deemed appropriate by the Court.

For Plaintiff's Second Claim for Relief

    For noneconomic damages of $20,000,000.00;

    For Plaintiff's reasonable attorneys' fees, costs, and disbursements; and

    For all other relief deemed appropriate by the Court.

/ / /

/ / /

/ / /

For Plaintiff's Third Claim for Relief:

    For noneconomic damages of $20,000,000.00;

    For Plaintiff's costs and disbursements; and

    For all other relief deemed appropriate by the Court.

DATED THIS __19th__ day of August, 2024

/s/ James M. Healy
James M. Healy, OSB No. 123403
jhealy@gattilaw.com
THE GATTI LAW FIRM
235 Front St. SE, Ste. 200
Salem, OR 97301
P: 503-363-3443
F: 503-371-2482
Attorneys for Plaintiff

Page 14 - COMPLAINT